**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ADAMS FAMILY, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 4:09-cv-01208 |
| | ) | |
| McDERMOTT INTERNATIONAL, INC., | ) | |
| BRUCE W. WILKINSON, MICHAEL S. | ) | |
| TAFF, and ROBERT A. DEASON, | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO LEAD**
**PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

NATURE AND STATE OF THE PROCEEDING ............................................................... v

STATEMENT OF THE ISSUE ......................................................................................... vii

STANDARD OF REVIEW ............................................................................................... vii

SUMMARY OF THE ARGUMENT ................................................................................ viii

ARGUMENT ...................................................................................................................... 1

    I.      Plaintiffs continue to rely on a fatally flawed Peak Season theory. ........................ 1

    II.     The Proposed Complaint's allegations of internal monitoring and reporting have also already been rejected by the Court. ................................................................ 4

    III.   The Proposed Complaint's allegations in support of the core operations theory do not remedy the defects identified by the Court. ...................................................... 9

    IV.   Plaintiffs' allegations of insider stock sales can neither give rise to nor meaningfully enhance an inference of scienter. .................................................... 13

    V.     The Proposed Complaint fails to raise an inference of scienter because it impermissibly relies on group pleading. .............................................................. 15

    VI.   The Proposed Complaint fails to satisfy the non-scienter pleading requirements of the PSLRA. ....................................................................................................... 16

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ............................................................................. 5, 17

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) .............................................................................. 9, 13

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
  565 F.3d (5th Cir.), *cert. denied*, 130 S. Ct. 199 (2009) .......................................... 15

*Foman v. Davis*,
  371 U.S. 178 (1962) ......................................................................................... vii, 18

*HCC, Inc. v. R H & M Mach. Co.*,
  39 F. Supp. 2d 317 (S.D.N.Y. 1999) .......................................................................... vii

*In re Applied Signal Tech., Inc. Sec. Litig.*,
  No. C 05-1027SBA, 2006 WL 1050174 (N.D. Cal. Feb 8, 2006) ............................ 13

*In re Enron Corp. Sec., Derivative, & "ERISA Litig."*,
  258 F. Supp. 2d 576 (S.D. Tex. 2003) ....................................................................... 15

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, 2006 WL 3747560 (E.D. La. Dec. 14, 2006) .................................... 13

*In re Tel-Save Sec. Litig.*,
  No. 98 CV 3145, 1999 WL 999427 (E.D. Pa. Oct. 19, 1999) ................................. 13

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) .................................................................................. 15

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
  527 F.3d 537 (5th Cir. 2008) ......................................................................... 5, 7, 8

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...................................................................................... 1

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) .................................................................................... 10

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*,
  195 F.3d 765 (5th Cir. 1999) .................................................................................... 18

*McCasland v. FormFactor Inc.*,
    No. 07-CV-05545, 2008 WL 2951275 (N.D. Cal. July 25, 2008) ........................................ 16

*McGowan v. Countrywide Full Spectrum Lending, Inc.*,
    No. H-07-4106, 2009 WL 2370780 (S.D. Tex. July 30, 2009) ..............................................vii

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding
    Corp.*,
    320 F.3d 920 (9th Cir. 2003) ......................................................................................... 13

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ......................................................................................... 13

*Ocelot Oil Corp. v. Sparrow Indus.*,
    847 F.2d 1458 (10th Cir. 1988) ....................................................................................vii

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) .................................................................................. 10, 13

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .................................................................................. 10, 15

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..................................................................... 5, 8, 15, 16, 17

*Stripling v. Jordan Prod. Co., LLC*,
    234 F.3d 863 (5th Cir. 2000) ...................................................................................vii, 18

*Thornton v. Blake*,
    No. 3:08cv775-HTW-LRA, 2009 WL 5064753 (S.D. Miss. Dec. 16, 2009) ........................vii

## STATUTES

15 U.S.C. § 78u-4 (2006) ............................................................................................... v

15 U.S.C. § 78u-5(c)(1)(A)-(B) (2006) ............................................................................ 17

28 U.S.C. § 636(b)(1)(A) (2006) ....................................................................................vii

## OTHER AUTHORITIES

FED. R. CIV. P. 9(b) ..................................................................................................... 17

FED. R. CIV. P. 12(b)(6) ..........................................................................................vii, 16, 18

FED. R. CIV. P. 15(a)(2) ................................................................................................vii

## NATURE AND STATE OF THE PROCEEDING

This securities fraud action was filed on behalf of purchasers of the stock of McDermott International, Inc. ("McDermott") between February 27, 2008 and November 5, 2008 (the "Class Period").  On May 22, 2009, Plaintiffs filed a 72-page amended Consolidated Complaint (the "Dismissed Complaint") with this Court.   On July 1, 2009, Defendants McDermott, Bruce W. Wilkinson, Michael S. Taff, and Robert A. Deason (collectively, "Defendants") filed a Motion to Dismiss Plaintiffs' Complaint.[1]   On September 1, 2009, Judge Gilmore referred the Motion to Dismiss and all other pretrial matters to Magistrate Judge Mary Milloy.

On February 24, 2010, the Magistrate entered her Memorandum and Recommendation on Defendants' Motion to Dismiss (the "Memorandum"), finding that Plaintiffs did not state a cause of action and that the suit should be dismissed.[2]  On March 26, 2010, this Court entered an Order Adopting Magistrate Judge's Memorandum and Recommendation.[3]  The March 26 Order dismissed the Dismissed Complaint without prejudice, noting that the Court was "not entirely convinced that [Plaintiffs] would be able to re-plead this case in a way that would allow them to overcome the numerous legal obstacles addressed in the Magistrate's Memorandum" and therefore satisfy the pleading standards of the Private Securities Litigation Reform Act ("PSLRA").[4]  The Court nevertheless allowed Plaintiffs to move for leave to file another amended complaint.  On April 30, 2010, Plaintiffs filed Lead Plaintiffs' Motion

---

[1]     Dkt. No. 71.  Plaintiffs filed a Response to the Motion to Dismiss (the "Response") on August 3, 2009 (Dkt. No. 86), and Defendants filed a Reply in Support of the Motion to Dismiss on August 24, 2009.  (Dkt. No. 90.)
[2]     Dkt. No. 102, at 31.  Plaintiffs filed Objections to the Memorandum on March 12, 2010.  Dkt. No. 105. Defendants filed a Response to Plaintiffs' Objections ("Response to Objections") on March 26, 2010.  Dkt. No. 107.
[3]     Dkt. No. 108.
[4]     *Id*. at 2; *see* § 15 U.S.C. 78u-4 (2006).

for Leave to Amend (the "Motion for Leave"),[5] attaching as Exhibit A a proposed amended complaint (the "Proposed Complaint").   This 102-page complaint represents Plaintiffs' third attempt to state a claim against Defendants.   It fails to do so, even more completely than did Plaintiffs' prior two filings.   Defendants therefore file this Opposition to Lead Plaintiffs' Motion for Leave.

---

[5]       Dkt. No. 110.

## STATEMENT OF THE ISSUE

At issue is whether Plaintiffs' Motion for Leave to Amend should be granted when the proposed amended complaint fails to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ."[6]  The District Court should exercise its discretion to deny leave to amend when the proposed amendment would not further the purposes of justice, as when the proposed amended complaint would be futile.[7]  Amendment is futile if the proposed amended complaint "would fail to state a claim upon which relief could be granted." [8]  Thus, the legal standard for determining if an amendment is futile is the same standard applied to a motion under Federal Rule of Civil Procedure 12(b)(6), that is, whether the amended complaint states a claim upon which relief could be granted.[9]

---

[6]  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[7]  *See* FED. R. CIV. P. 15(a)(2); *Foman*, 371 U.S. at 182; *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.").

[8]  *Stripling*, 234 F.3d at 873.

[9]  *Id.*  Because the Court has not withdrawn its referral to the Magistrate of pretrial matters in this case and because the test of futility is the same as that for a motion under Rule 12(b)(6), the Motion for Leave may be referred to the Magistrate for a recommendation to the Court.  Although there is no controlling case law in the Fifth Circuit, other courts have held that a motion for leave to amend is dispositive for purposes of the Magistrate's consideration when a ruling on the motion for leave to amend would effectively dispose of a claim or defense or effectively end the case.  *See* 28 U.S.C. § 636(b)(1)(A) (2006).  As the Tenth Circuit has held, "motions not designated on their face as [being of a type explicitly listed as dispositive in 28 U.S.C. § 636(b)(1)(A)] are nevertheless to be treated as such a motion when they have an identical effect."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462-63 (10th Cir. 1988); *see also HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317, 321 (S.D.N.Y. 1999) ("[D]enial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility."); *Thornton v. Blake*, No. 3:08cv775-HTW-LRA, 2009 WL 5064753, at *1 (S.D. Miss. Dec. 16, 2009) (same).  Courts in this district have cited *Ocelot* approvingly.  *See, e.g.*, *McGowan v. Countrywide Full Spectrum Lending, Inc.*, No. H-07-4106, 2009 WL 2370780, at *2 n.2 (S.D. Tex. July 30, 2009) (Froeschner, Mag. J.).

### SUMMARY OF THE ARGUMENT

The Court should deny the Motion for Leave and dismiss this case with prejudice. As the Court correctly anticipated in its Order of March 26, 2010, the Proposed Complaint does not remedy the fatal pleading flaws that were carefully delineated in the Memorandum. Instead, the Proposed Complaint relies upon the same theories that Plaintiffs previously advanced in support of their claim of scienter and that the Court has already rejected. In many places, the Proposed Complaint boldly recapitulates these flawed allegations verbatim, utterly ignoring the Court's finding that they do not meet the requirements of the PSLRA. In other places, the Proposed Complaint attempts to camouflage the same defects, including the shopworn "Peak Season" theory, with what is claimed to be a "new" approach. The "new" approach, however, is actually identical to the "old," and fails as completely in the Proposed Complaint as in the Dismissed Complaint.

For example, Plaintiffs contended in the Dismissed Complaint that scienter could be found in the allegation that the Three Qatar Projects were known to have been unprofitable long before the unprofitability of those Projects was disclosed. Plaintiffs now contend that what was earlier known but undisclosed was not the negative profitability of the Projects, but the effect of the negative profitability of those Projects on the overall profitability of J. Ray and McDermott. (Mot. for Leave at 2-3.) This distinction is meaningless. The linchpin of Plaintiffs' theory continues to be that profitability "depended on whether J. Ray could perform its pipeline installation work for the Three Qatar Projects 'during peak summer construction months' of 2008 . . . ." (Mot. for Leave at 6.) This is *precisely* the theory of scienter and liability that the Court has already rejected as groundless, and it relies upon the same allegations that the Court has already rejected as inadequate.

The same is true with respect to every one of Plaintiffs' other theories of liability and scienter.  Plaintiffs again contend that their allegations regarding internal monitoring systems establish Defendants' knowledge concerning alleged delays and problems with the Projects. This theory has been rejected by the Court, and Plaintiffs offer no new allegations sufficient to redeem it.  Next, Plaintiffs revive their "core operations" theory, contending that Defendants are presumed to have known about the alleged delays and problems based on the importance of the Projects to McDermott.  This, too, is a theory that the Court has already rejected.  It is not rehabilitated by any new allegations in the Proposed Complaint.  Finally, Plaintiffs again allege that stock sales by the Individual Defendants and other company insiders demonstrate Defendants' motive to deceive the public.  These allegations were rejected by the Court respecting the Dismissed Complaint, and they are not improved upon in any way by the Proposed Complaint.

In the end, the Proposed Complaint relies principally upon thirty additional pages of irrelevant and inadequate quotations to buttress the allegations of scienter that have already been rejected by the Court.  But these added quotations do not begin to show the requisite scienter, i.e., that any Defendant knew but failed to timely disclose any material fact during the initial Class Period or at any other time.  The Motion for Leave also relies to a troubling extent upon mischaracterizations of what actually does and does not appear in the Proposed Complaint and, worse, upon mischaracterizations of what the Magistrate found in her Memorandum and the Court has found in its Order.  All of this is designed to mask the simple fact that the Proposed Complaint is even more deficient than its predecessor.  It does not adequately plead scienter. It does not plead with particularity that any statement of a material fact was false or misleading. It ignores the fact that many of its alleged misrepresentations are in fact protected by the

PSLRA's Safe Harbor provision.  And it engages in even more puzzle pleading, group pleading, and misquotation than did the Dismissed Complaint.

Because the Proposed Complaint does not correct any of the deficiencies identified by the Court, and because that Complaint in fact suffers even more pleading defects than did the Dismissed Complaint, allowing Plaintiffs to file their Proposed Complaint would be an act of futility.  It is abundantly clear that Plaintiffs cannot state a claim upon which relief can be granted.  It is clear that this is so because Plaintiffs continue to rely upon a theory of "fraud by hindsight" that has been condemned by this Court and every other.  And it is therefore clear that under Rule 15 and controlling case law, the Motion for Leave should be denied and this action dismissed with prejudice.

**ARGUMENT**

**I.      Plaintiffs continue to rely on a fatally flawed Peak Season theory.**

The Memorandum found that the Dismissed Complaint's central theory of liability was that "Defendants knew, but failed to disclose that the profitability of the Qatar Projects depended on 'Peak Season' performance, that delays had rendered the Qatar Projects unprofitable, and that the delays were caused by systemic operational issues at J. Ray."[10]   The Memorandum also found that "[t]o show that McDermott's officers were aware that profitability depended on 'Peak Season' performance, Plaintiffs rel[ied] on a single statement by John Fees."[11]   Finding that Fees's statement did not support Plaintiffs' theory that the Defendants knew "that the Qatar Projects' profits depended on 'Peak Season' performance" but rather "reveals only that the estimated 'lay rates' for the Qatar Projects 'proved to be too aggressive,'"[12] the Court properly rejected Plaintiffs' theory as fraud-by-hindsight, explaining that "courts will not infer 'that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly.'"[13]

---

[10]      Mem. at 13.

[11]      *Id.* at 16; *see also id.* at 20.   John Fees, McDermott's current CEO, is quoted as saying on November 6, 2008:

> The estimates used in our bid for all three projects were based upon similar completed successful projects.  These reference projects were performed during peak summer construction months so they experienced high productivity and few downtime days.  Productivity is measured in how many joints of pipe a day we expect to accomplish.  In hindsight this joints per day, or what we call lay rates, were proved to be too aggressive and we've not been able to achieve production at these levels.  As is typically the case in the construction business, when you start a project with a poor bid assumption it's hard to recover.

Dismissed Compl. ¶ 98; *see also* Proposed Compl. ¶¶ 125, 142.

[12]      Mem. at 16-17.

[13]      *Id.* at 16 (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009)).  Although Plaintiffs argued that they had made other allegations supporting the "Peak Season" theory, the Court rejected these allegations as well. Mem. at 20-30; Order dated Mar. 26, 2010 (Dkt. No. 108)*; see also* Objs. at 5-6.  For example, Plaintiffs alleged that McDermott's failure to perform the Three Qatar Projects during the "Peak Season" would subject the company to substantial liquidated damages and that statements by a confidential witness supported the "Peak Season" theory.  Objs. at 5-6.  Plaintiffs also insisted that Defendant Wilkinson, then the CEO of McDermott,

Plaintiffs' Proposed Complaint relies upon the same "Peak Season" theory that the Court has already rejected.  Nothing but verbiage has changed from the Dismissed Complaint to the Proposed Complaint.  Plaintiffs continue to allege that the Defendants knew that in order for J. Ray to hit alleged profitability targets, the Projects would have to be performed "'during peak summer construction months' of 2008 . . . ."[14]  And Plaintiffs continue to allege that throughout the Class Period Defendants knew, but did not disclose, that J. Ray would not be able to perform the Projects during that window of time.[15]  Plaintiffs' core theory of liability and scienter is exactly the same as that already rejected by the Court.

In their Motion for Leave, Plaintiffs give lip-service to the Court's conclusion that "the [Dismissed] Complaint did not contain a factual basis for Plaintiffs' claims that Defendants were aware that the profitability of [the Projects] depended upon the work being performed during the summer of 2008."[16]  Plaintiffs claim to have "remedied that deficiency by alleging that Defendants knew" that delays precluded performance "in accordance with J. Ray's bid assumptions," which precluded J. Ray from earning the 10-12% profit margin that Defendants allegedly represented J. Ray would earn.[17]  Plaintiffs then argue:

---

supported the "Peak Season" theory when he said during a May 13, 2008, investor conference call, "Since the summer months are considered the construction season, we hope to make up for some of the lost time [from the first quarter of 2008] in the second and third quarters."  *Id*. at 16 (citing Dismissed Compl. ¶ 43).  None of these allegations supported Plaintiffs' theory, and the Court therefore rejected the entire "Peak Season" theory.  Mem. at 20-30; Order dated Mar. 26, 2010  (Dkt. No. 108).  Moreover, although Plaintiffs relied heavily on five confidential witnesses to support their scienter claim, the Proposed Complaint contains no allegations from any such witness.

[14]     Mot. for Leave at 6; *see also* Proposed Compl. ¶¶ 5, 125, 142-45.

[15]     Mot. for Leave at 6; *see also* Proposed Compl. ¶¶ 5, 125, 142-45.

[16]     Mot. for Leave at 2 (emphasis omitted).

[17]     *Id.*

Plaintiffs thus have clarified that their allegations do not in any way depend on whether the Three Qatar Projects were or were not profitable in and of themselves.   Rather, they concern solely whether the profits of J. Ray and the Company as a whole, and the profit margins of J. Ray, were as represented.[18]

This is sleight-of-hand.   Both the "old" theory (that the Projects were not profitable)[19] and the "new" theory (that the company could not meet targeted profit margins)[20] rely on the three Projects and the financial consequence of J. Ray's inability to perform during the summer of 2008.   Both theories complain of the financial performance of the Projects, and both theories assert that Defendants knew that performance during the summer of 2008 would determine whether that financial performance would be positive or negative.   The scienter requirement is the same for both the "old" and "new" theories, and still has not been adequately pleaded or supported.

Plaintiffs do not contend in their Motion for Leave that the Proposed Complaint adds any new factual allegations in support of the theory that the Defendants knew that the Projects had to be performed during the Summer of 2008 to avoid negative financial consequences.   Rather, they make the conclusory assertion that such knowledge "is admitted and not even the subject of inference."[21]   Plaintiffs again rely on the November 6, 2008 statement by John Fees, which is quoted or referenced even more extensively in the new complaint than in the old.[22]   Plaintiffs persist in their assertion that Fees's statement supports their theory that J. Ray's

---

[18]    *Id.* at 3.

[19]    *See, e.g.*, Dismissed Compl. ¶ 94 ("[F]ar from realizing profits of at least 10-12 percent, J. Ray's work to complete three pipeline installation projects in Qatar (which collectively represented approximately $1.4 billion of revenues, or one-third of J. Ray's reported backlog), would not generate any profits, and would result in contract losses of at least $90 million just to complete the projects.").

[20]    *See, e.g.*, Proposed Compl. ¶ 121 ("[F]ar from realizing profits of at least 10%-12%, J. Ray had a loss of $19.7 million in the third quarter of 2008, and its profit margins would only be in the range of 6%-8% for the next four to five quarters.   This dramatic negative change was primarily caused by Three Qatar Projects which suffered $90 million in contract losses.").

[21]    Mot. for Leave at 6.

[22]    Proposed Compl. ¶¶ 3, 5-7, 28, 125, 127-28, 138, 141-42, 145-47, 150.

profits were dependent on a bid assumption under which certain work on the Projects would be performed during the Summer of 2008,[23] even though the Court specifically found that the statement "reveals only that the estimated 'lay rates' for the Qatar Projects 'proved to be too aggressive.'"[24] "Peak Season" does not help Plaintiffs in its latest iteration any more than it did in its last.  The Court should deny leave to plead this failed theory yet another time.

## II.    The Proposed Complaint's allegations of internal monitoring and reporting have also already been rejected by the Court.

The Dismissed Complaint alleged that Defendants' knowledge of delays on the Projects—and therefore their knowledge that the Projects would have negative financial consequences—could be inferred from the purported existence and use by Defendants of various internal reporting systems.[25]  To support these allegations, the Dismissed Complaint relied in part on the allegations of five Confidential Witnesses, who claimed that McDermott used a particular software tool and conducted certain types of meetings to review the progress of J. Ray's projects on various timeframes.[26]  Plaintiffs also relied on statements made by certain Defendants, which Plaintiffs contended showed that the Defendants reviewed the details of the Projects.  For example, Plaintiffs alleged that Wilkinson stated in November 2007:

> [W]e've a project review methodology, for every month all the major projects go through a project review that cover productivity,

---

[23]     *E.g.*, Mot. for Leave at 2, 6-7; Proposed Compl. ¶¶ 125, 142; *see also id.* ¶¶ 3, 5-7, 28, 127-28, 138, 141, 145-47, 150.

[24]     Mem. at 16.  Plaintiffs do not argue in their Motion for Leave that their allegations concerning other alleged bid assumptions salvage the Peak Season theory of scienter.  *See* Proposed Compl. ¶ 5 (asserting that J. Ray's profit margins depended on three performance assumptions).  The first alleged "bid assumption" is exactly the same as the original Peak Season theory—that J. Ray had to "complete the undersea pipeline installation work for the Three Qatar Projects during the summer of 2008."  Proposed Compl. ¶ 5(a).  The second is another way of saying that summer 2008 performance was required—i.e., that J. Ray had to have the derrick barges available for work in the spring and summer of 2008.  *Id.* ¶¶ 5(b), 150.  The third—that J. Ray would not have to pay liquidated damages on the Projects—is also based on an alleged assumption that the Projects had to be performed in the summer of 2008.  *Id.* ¶¶ 5(c), 144.  Thus, all of the "bid assumptions" in the Proposed Complaint are nothing more than the Peak Season theory from the Dismissed Complaint.  And, like the Peak Season theory in the Dismissed Complaint, none of these purported "bid assumptions" are supported by Fees's statement or any other evidence.

[25]     *See, e.g.*, Dismissed Compl. ¶¶ 130-33; Mem. at 23-25.

[26]     Mem. at 23, 25; Dismissed Compl. ¶¶ 130-33.

> target schedules, absolutely everything going on in it and so what
> you have is the best judgment of management on a month-to-
> month basis in effect rescheduling every project and recalibrating
> every project looking at its then reality.  And so . . . when we say
> 2.8 billion currently believe to be [recognized] in '08 that's based
> upon the judgment everybody looking at all the backlog then and
> making that judgment.[27]

The Court correctly concluded that the internal reporting and monitoring allegations did not support an inference of scienter.  In particular, the Court found that Plaintiffs were unable to allege:

> that these systems were utilized to alert any McDermott corporate
> officer that the Qatar projects had been delayed by the unfinished
> well-heads, or the conditions of the barges.  Nor do the witnesses
> allege which individual McDermott officers utilized the reporting
> systems, or when.  Nor have Plaintiffs alleged any specific
> information to show that the reports or software contained
> statements that were in conflict with Defendants' representations
> during the class period. . . .  Plaintiffs have failed to allege "details
> regarding the contents" of the reporting systems that were "at odds
> with [Defendants'] public statements at the time those statements
> were made."[28]

As the Court noted, the Fifth Circuit has held on multiple occasions that "[a]n unsupported general claim of the existence of company reports that reveal information contrary to reported accounts is insufficient to survive a motion to dismiss."[29]  Rather, "[s]uch allegations must have corroborating details regarding the contents of allegedly contrary reports, their authors and recipients."[30]  Because Plaintiffs failed to allege the information required to support scienter allegations based on internal reporting, the Court rejected the internal reporting theory.

---

[27]     Dismissed Compl. ¶ 132.  The same quotation appears in the Proposed Complaint ¶ 146(b).

[28]     Mem. at 25 (citing *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 527 F.3d 537, 540 (5th Cir. 2008); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)).  The Magistrate did not base her conclusion on any finding regarding the credibility of Plaintiffs' purported Confidential Witnesses.  Instead, she found that even assuming the truth of the Confidential Witness allegations, Plaintiffs had failed to allege information sufficient to survive a motion to dismiss.  *Id.*

[29]     *Id.* at 24 (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 370 (5th Cir. 2004)).

[30]     *Id.*

Despite the Court's conclusion, Plaintiffs argue in their Motion for Leave that their allegations of internal monitoring and reporting support an inference of scienter.[31]  But these are the same allegations that appeared in the Dismissed Complaint and were rejected by the Court.[32]  Plaintiffs assert in their Motion for Leave that "Defendants constantly reviewed and analyzed the performance of the Three Qatar Projects and the impact of delays in that performance on profits and profit margins."[33]  This is no more than a summary of the internal reporting allegations in the Dismissed Complaint.[34]  Likewise, Plaintiffs assert that "J. Ray created [prior to the Class Period] a rigorous monthly project review process to determine whether J. Ray was behind schedule and whether any steps could or should be taken to 'mitigate' delays."[35]  But the only support they offer as to how that process was actually used during the Class Period comes verbatim from the Dismissed Complaint.[36]

Plaintiffs offer one final assertion in support of their allegation that Defendants used internal monitoring and reporting systems to analyze the Three Qatar Projects during performance, claiming that "Defendants Wilkinson and Taff admitted during the May 13, 2008 Conference Call that they were reviewing and analyzing detailed information concerning the delays in the performance of the Three Qatar Projects and the impact of those delays 'on recording revenues and profits.'"[37]  Again, these are the same quotations upon which Plaintiffs

---

[31]    Mot. for Leave at 6-9.

[32]    *Id.*; Proposed Compl. ¶¶ 19-20, 30, 146-49.

[33]    Mot. for Leave at 7 (citing Proposed Compl. ¶¶ 49, 64, 74-79, 109, 112).

[34]    *Compare* Proposed Compl. ¶¶ 49, 64, 74-79, 109, 112 *with* Dismissed Compl. ¶¶ 35, 43-46, 78, 80.

[35]    Mot. for Leave at 7 (citing Proposed Compl. ¶ 146(a)).

[36]    *Compare* Proposed Compl. ¶ 146(b) *with* Dismissed Compl. ¶ 132.  Specifically, Plaintiffs assert that "Defendant Wilkinson admitted that senior management, himself included, tracked the performance of 'major' J. Ray projects every month, including the impact of project delays ('slippage') on the performance of backlog work and, therefore, revenue and profits, using a sophisticated tracking and reporting system." Mot. for Leave at 7 (citing Proposed Compl. ¶ 146(b)).  The same quotation that Plaintiffs cite as the only support for this allegation played an identical role in the Dismissed Complaint.  Dismissed Compl. ¶ 132.  The Magistrate expressly found that this allegation failed to raise an inference of scienter.  Mem. at 24-25.

[37]    Mot. for Leave at 7 (citing Proposed Compl. ¶ 146(b)-(d)).

relied for an identical allegation in the Dismissed Complaint.[38]   Nor have Plaintiffs alleged any

new "details regarding the contents . . . authors and recipients" of any report that conflict with

Defendants' contemporary, public statements.[39]

In its discussion of internal monitoring and reporting, Plaintiffs' Motion for Leave

distorts the allegations actually contained in the Proposed Complaint—a recurrent theme in

Plaintiffs' filings.[40]   Plaintiffs cite as support for their internal-reporting theory of scienter a

number of allegations in the Proposed Complaint that have absolutely nothing to do with

monitoring or reporting.[41]   For example, Plaintiffs cite paragraphs 5, 76, 125, and 142-45 as

evidence that Defendants monitored the Three Qatar Projects' performance.[42]   None of these

allegations supports a conclusion that Defendants monitored the performance of the Three Qatar

Projects at any time.[43]   Similarly, Plaintiffs cite paragraphs 49, 64, 74-79, 109, and 112 for the

proposition that "Defendants constantly reviewed and analyzed the performance of the Three

Qatar Projects and the impact of delays in that performance on profits and profit margins.[44]

Again, none of the cited paragraphs has anything to do with any kind of monitoring or review at

a per-project level.[45]   In fact, these allegations serve principally to show that Defendants were

aware of and disclosed the financial impacts of delays on the Three Qatar Projects *as those*

*impacts unfolded*.

---

[38]      *Compare* Proposed Compl. ¶ 146(b)-(d) *with* Dismissed Compl. ¶¶ 44, 132.  With the exception of one conclusory allegation that Defendants possessed the requisite mental state to support Plaintiffs' claims, the evidence offered is identical in both complaints.

[39]      *Shaw*, 537 F.3d at 540.

[40]      *See, e.g.*, Mot. to Dismiss at 17-18 (noting misleading allegations concerning stock sales and Deason's holdings); Reply in Support of Mot. to Dismiss at 1 (general mischaracterization of the Dismissed Complaint), 5 (personal knowledge of the Confidential Witnesses), 8 (stock sales and options held by Defendants); Response to Objs. at vii (noting misstatements generally), 2-4 (Fees's statement and the Magistrate's discussion thereof), 7-8 (case law related to the "core operations" exception), 10 (substance of Confidential Witness allegations in the Dismissed Complaint), 12 (quotations of Defendants).

[41]      *See* Mot. for Leave at 6-9.

[42]      *Id.* at 6.

[43]      *See* Proposed Compl. ¶¶ 5, 76, 125, 142-45.

[44]      Mot. for Leave at 7 (citing Proposed Compl. ¶¶ 49, 64, 74-79, 109, 112).

[45]      Proposed Compl. ¶¶ 49, 64, 74-79, 109, 112.

The only new allegations in the Proposed Complaint regarding internal monitoring and reporting fail to support Plaintiffs' theory of scienter. Plaintiffs allege that Wilkinson stated in May 2007 that "we had this rigorous project review monthly . . . if we see a problem we see it early, giving us time to mitigate it."[46] This quotation offers no more support for an inference of scienter than those contained in the Dismissed Complaint. Plaintiffs fail to indicate what particular information any specific Defendant learned from any particular internal reporting, much less how or when that occurred.[47]

Plaintiffs also make a number of allegations regarding the *bid review* process,[48] now contending that Defendants had culpable knowledge earlier in the process—at the bid stage as opposed to the performance stage. But the allegedly culpable knowledge remains the same— that Defendants knew the Projects must be performed during summer 2008 to achieve positive financial results. As the Court has concluded, there are no adequately pleaded facts supporting the theory that the Projects required summer performance for their financial success, or that this was as a bid assumption, or that any Defendant believed this to be the case. None of these new allegations provides the "who, what, when, . . . where," and "why" necessary to support an allegation of fraud.[49]

---

[46]     *Id.* ¶ 146(a).

[47]     *See Shaw*, 537 F.3d at 540.

[48]     *See* Mot. for Leave at 7-8 (citing Proposed Compl. ¶¶ 26, 78, 147, 149).

[49]     *See Southland*, 365 F.3d at 362. Because Plaintiffs fail to plead any of these elements, their charge that Defendants committed fraud because they either (1) knew the Three Qatar Projects could not be performed on schedule or (2) lied about the review process is nonsense. *See* Mot. for Leave at 8 n.2. Plaintiffs do not even allege what any alleged review process entailed, who participated, or when it revealed any particular information to any Defendant. They cannot plausibly say that Defendants had knowledge of such purported facts, without specifying what those facts are.

Not only have Plaintiffs failed to add anything of substance to their internal reporting theory, they have in fact abandoned many of the allegations that were previously claimed to support it. The Proposed Complaint makes no mention of Confidential Witnesses or the previous claim that McDermott used particular computer software as part of internal review and reporting processes. These same allegations were once said by Plaintiffs to offer "substantial information" in support of Plaintiffs' internal reporting theory. Objs. at 14. Their absence from the Proposed Complaint leaves Plaintiffs with absolutely no corroboration of the Proposed Complaint's allegations.

In the Proposed Complaint as in the Dismissed Complaint, Plaintiffs have demonstrated only that *some* internal review processes existed—a fact that Defendants have never disputed—and that one or more Defendants may have reviewed Defendants' bid assumptions for the Three Qatar Projects.[50]  Plaintiffs do not plead specifically who participated in such reviews or when, what information any Defendant learned, or how any of these demonstrates prior knowledge of the delays that McDermott experienced during the Class Period.  Even taken as true, these allegations therefore do not support any inference that any Defendant knew but failed to timely disclose material information.

Plaintiffs' allegations related to internal monitoring and reporting fail to satisfy the PSLRA's pleading standards and therefore add nothing to the Proposed Complaint's pleadings of falsity or scienter.  Because these allegations do not remedy any of the defects of the Dismissed Complaint, the Court should deny Plaintiffs leave to repeat these allegations.

### III. The Proposed Complaint's allegations in support of the core operations theory do not remedy the defects identified by the Court.

Plaintiffs argued in response to Defendants' Motion to Dismiss and in their Objections to the Magistrate's Memorandum that the Dismissed Complaint raised a strong inference of scienter—under the "core operations" exception—because the Three Qatar Projects were of critical importance to McDermott's profitability.[51]  The Memorandum adopted by the Court explained that the exception is applied in only "exceedingly rare" circumstances, such as when which a single transaction or product dominates an entire company's viability or

---

[50]     Proposed Compl. ¶ 146(a); Mot. for Leave at 7-8 (citing Proposed Compl. ¶¶ 26, 78, 147, 149).

[51]     Resp. to Mot. to Dismiss at 12; Objs. at 6-12.  The "core operations" exception is a judicial rule from the Ninth Circuit that "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers."  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. 2008) (internal quotation marks and citation omitted).

profitability.[52]   For example, the Court recognized that the Fifth Circuit's only application of the exception to date was in a case in which a single transaction offered a possible thirty-fold revenue increase for a small, struggling company.[53]   Likewise, the Seventh Circuit applied the exception to a company whose principle product, accounting for over half its sales, experienced "evaporating" demand, while the next model of the product was not yet available due to manufacturing problems, even as the defendants touted strong sales of both models.[54]   In the present case, the Court correctly concluded that Plaintiffs' allegations concerning the Projects fell far short of these types of circumstances.

Although Plaintiffs did "not detail any facts in the Complaint to support" the core operations exception in their response to the Motion to Dismiss,[55] Plaintiffs pointed to a number of allegations in the Dismissed Complaint in their Objections to the Memorandum that allegedly established that timely performance of the Projects was critical to McDermott.[56]   These included allegations that: (1) the potential liquidated damages of $100 million were more than McDermott's net income for the third quarter of 2008; (2) the Projects represented $1.4 billion in revenue and anticipated profits of $140-$170 million; (3) J. Ray was McDermott's largest business segment; and (4) J. Ray was responsible for nearly two-thirds of McDermott's total net income during 2007.   The Court properly adopted the Memorandum's conclusion that these allegations were insufficient to warrant an inference of scienter under the core operations exception because "[t]he record shows only that, when combined, the projects amounted to

---

[52]     *See* Mem. at 27 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 & n.3 (9th Cir. 2008)).

[53]     *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 700 (5th Cir. 2005).   *See* Mem. at 25-27 (rejecting application of *Plotkin* to this case); Reply in Support of Mot. to Dismiss at 7 n.19 (discussing other cases cited by Plaintiffs).

[54]     *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 707 (7th Cir. 2008).

[55]     Mem. at 26-27.

[56]     Objs. at 6-12.

approximately one third of the potential revenue for one of McDermott's three business segments."[57]

Plaintiffs once again contend that Defendants' knowledge about the alleged delays and problems associated with the Projects (and knowledge of the effects and financial consequences of those alleged delays and problems) should be presumed because the Projects were critical to J. Ray's profits and profit margins, which were in turn critical to McDermott's profits.[58]  In their Motion for Leave, Plaintiffs acknowledge that the Memorandum "determined that the [Dismissed] Complaint failed to allege facts sufficient to establish that the Three Qatar Projects were critical." [59]  Plaintiffs now claim to have

> remedied that deficiency with additional detailed factual allegations demonstrating that J. Ray's profits and profit margins were critical and material to Company's business and profits, and that performance of the Three Qatar Projects was critical and material to J. Ray's profit margins and the profits of J. Ray and McDermott as a whole.[60]

Thus, Plaintiffs here admit that they advance exactly the same core operations theory now as before, contending only that the Proposed Complaint contains additional allegations sufficient to cure the defects that the Court identified with the Dismissed Complaint.

In fact, the allegations to which Plaintiffs point in their Motion for Leave are identical to the allegations which they claim supported the core operations theory in the Dismissed Complaint.[61]  As discussed above, the Magistrate found that "[t]he record shows only

---

[57]     Mem. at 26.
[58]     Mot. for Leave at 2-3, 10-13; *see also* Proposed Compl. ¶¶ 2-5, 51, 57, 74-76, 81, 100, 102, 112, 114, 119, 128, 138, 141-47, 150.
[59]     Mot. for Leave at 3.
[60]     *Id.*
[61]     Plaintiffs now point to paragraphs 45 and 128 of the Proposed Complaint—and only those two paragraphs—as supporting the core operations theory.  Mot. for Leave at 10-13.  The entire substance of these paragraphs is contained in paragraphs 9, 98, 102, and 114 of the Dismissed Complaint.  Even if one generously attempts to find support for the core operations theory in other paragraphs, the Proposed Complaint merely parrots the Dismissed Complaint.  For example:

that, when combined, the projects amounted to approximately one third of the potential revenue for one of McDermott's three business segments."[62]   The facts regarding the size and importance of the Three Qatar Projects have not changed.   Therefore, neither has the conclusion that the Court must draw:  a core operations inference cannot be drawn here.[63]

Plaintiffs' core operations theory fails now for exactly the same reasons that it failed before.   Plaintiffs' new reliance on quotations from *prior to* the Class Period does not change this result.[64]   Plaintiffs apparently hope that because the Three Qatar Projects accounted for a larger percentage of the J. Ray and McDermott backlogs prior to the purported Class Period than during it, the Court will see the projects as more "critical" to McDermott's success than they actually were.[65]   But two inescapable facts remain:  (1) "The record shows only that, when

---

- Proposed Complaint paragraphs 2-3 and 22 repeat Dismissed Complaint paragraph 2.
- Proposed Complaint paragraph 121 repeats Dismissed Complaint paragraph 94.
- Proposed Complaint paragraph 124 repeats Dismissed Complaint paragraph 97.
- Proposed Complaint paragraphs 125 and 142 repeat Dismissed Complaint paragraph 98.
- Proposed Complaint paragraphs 125-27 repeat Dismissed Complaint paragraphs 98-100.
- Proposed Complaint paragraph 129(b) repeats Dismissed Complaint paragraph 102.
- Proposed Complaint paragraph 129(c) repeats Dismissed Complaint paragraph 103.

Plaintiffs thus merely repeat allegations this Court has already found insufficient, with occasional conclusory statements.

[62]   Mem. at 26.

[63]   Although entirely unclear from Plaintiffs' Motion for Leave, it is possible that Plaintiffs are attempting to put a slight twist on the core operations theory by adding an extra analytical step in the theory.  Rather than asserting that the Projects were directly critical to McDermott, Plaintiffs appear to assert that the Projects were financially critical to J. Ray, and J. Ray in turn was financially critical to McDermott, the corporation whose stock Plaintiffs owned.  Of course, there is no meaningful difference here.  *See* Mot. for Leave at 3.  The slightly revised theory suffers from the same flaws as before.  And the facts on which the theory is based are the same as those that were previously found to be insufficient.  Plaintiffs make no contrary contention in their Motion for Leave.

[64]   *See* Proposed Compl. ¶¶ 24-25, 27, 29-49 (reciting financial information such as projected revenues and profits from 2005 through 2007).  Plaintiffs do not contend in their Motion for Leave than any of these allegations support the core operations theory.

[65]   Nor do the Proposed Complaint's lengthy quotations from third parties and stock analysts add any weight to the core operations theory.  *See, e.g.*, Proposed Compl. ¶¶ 25, 31, 36, 40, 43, 65, 71, 80, 107, 113, 116, 129.  Again, many of these are from before the purported Class Period and therefore add nothing to the scienter analysis.  *Id.* ¶¶ 25, 31(a)-(c), 36, 40, 43.  Those that do date from the purported Class Period are merely duplicative of the many such quotations that were in the Dismissed Complaint.  *See, e.g.*, Dismissed Compl. ¶¶ 27-28, 36-37, 47, 57, 65, 67, 71-73, 81-86, 101-03.  As Judge Denny Chen of the Southern District of New York noted when transferring this case to this Court, these quotations from securities analysts appear to be offered solely as evidence of loss causation.  Mem. Decision entered Apr. 14, 2009, Dkt. No. 39, at 8.  Even assuming these quotations are competent evidence for that purpose, they do nothing to address the deficiencies the Court identified in the Dismissed Complaint's pleading of scienter.

combined, the projects amounted to approximately one third of the potential revenue for one of

McDermott's three business segments" at the time of the Class Period;[66] and (2) the Three Qatar

Projects were "just three projects out of an [Offshore Segment] portfolio of about 30 major

jobs."[67]   Just as importantly, Plaintiffs never allege what material, undisclosed information any

Defendant would have known *even if* the Three Qatar Projects were as important as Plaintiffs

insist.[68]   Plaintiffs have again failed to plead that the Three Qatar Projects were "anywhere near"

as critical to McDermott as the transactions in any of the cases to which Plaintiffs cite.[69]   The

core operations exception therefore does not apply here.

**IV.    Plaintiffs' allegations of insider stock sales can neither give rise to nor meaningfully
enhance an inference of scienter.**

The Court previously concluded that Plaintiffs' allegations concerning stock sales

by Individual Defendants and other insiders did not have "any relevance" because the Dismissed

---

[66]      Mem. at 26.

[67]      *Id.* at 27.

[68]      On the contrary, Plaintiffs repeatedly acknowledge how much Defendants *did* disclose as the delays on the
Three Qatar Projects worsened.  *See* Proposed Compl. ¶¶ 48-49, 110, 113(a), 113(d), 143, 146(b)-(d).

[69]      Mem. at 27.  Plaintiffs cite essentially the same set of cases in their Motion for Leave as those that they
cited in their now-overruled Objections to the Recommendation.  *Compare* Objs. at 6-12 *with* Mot. for Leave at 10-
13 (each citing *Berson*, 527 F.3d at 982; *Plotkin*, 407 F.3d at 690; *No. 84 Employer-Teamster Joint Council Pension
Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003); and *In re Applied Signal Tech., Inc. Sec.
Litig.*, No. C 05-1027SBA, 2006 WL 1050174 at *6 (N.D. Cal. Feb 8, 2006)).

Plaintiffs cite three additional cases in the Motion for Leave, all of which may be easily distinguished.  The
first, *In re OCA*, involved misrepresentations regarding the accounting for a company's largest asset, patient
receivables, which constituted 60% of the company's total assets.  *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-
2165, 2006 WL 3747560, at *18 (E.D. La. Dec. 14, 2006).  OCA was a small company, with an accounting
department of fewer than twenty people, yet numerous accounting employees were aware of severe accounting
irregularities.  *Id.*  Even more significantly, the company's outside auditors, Ernst & Young, had specifically
identified irregularities in the company's accounting for patient receivables, and the company had publicly
acknowledged changes to specifically relevant accounting rules.  *Id.* at *2.  No allegations here indicate that the
Three Qatar Projects were remotely as critical to McDermott as patient receivables were to OCA or that Defendants
were told of the delays on those projects but chose not to disclose whatever information they received.

The two other cases that Plaintiffs now cite are both from other circuits and are similarly distinguishable.
*Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (explicitly discussing *pre-PSLRA* pleading standards for
recklessness in the portion cited by the Motion for Leave); *In re Tel-Save Sec. Litig.*, No. 98 CV 3145, 1999 WL
999427, at *4-5 (E.D. Pa. Oct. 19, 1999) (defendant in question "routinely negotiated and executed entire
transactions completely by himself on behalf of the Company" and directly participated in transactions about which
he made material misstatements, key facts upon which the court explicitly conditioned its "core operations" finding).

---

Complaint did not otherwise raise any inference of scienter.[70]   The Court recognized that although stock sales can, in certain circumstances, meaningfully enhance an inference of scienter, there must first be an inference of scienter to enhance.   The Court concluded that because the Dismissed Complaint failed to raise any inference of scienter, there was no inference of scienter to be enhanced, and the stock sales were therefore irrelevant to the scienter analysis.

In their Motion for Leave, Plaintiffs flatly misstate the Magistrate's finding. Plaintiffs assert that the Memorandum found that the Dismissed Complaint's stock sale allegations were sufficient to enhance an inference of scienter had any inference of scienter been raised by the other allegations.[71]   The Magistrate found nothing of the sort.   The Memorandum merely noted generally that "allegations of insider stock sales are considered 'motive and opportunity allegations,' and so, can be used only to bolster an inference of scienter that arises from other sources."[72]   This is not a finding that the stock sale allegations *contained in the Dismissed Complaint* would meaningfully enhance an inference of scienter had it been raised by other allegations.   The Memorandum is completely silent as to whether Plaintiffs' stock sale allegations would or would not enhance an inference of scienter.

In fact, the allegations in the Dismissed Complaint would not have enhanced an inference of scienter, had one been raised.   Allegations of insider stock sales may be probative of scienter only if the sales are suspicious in timing or amount.[73]   Trading is suspicious when it is "dramatically out of line with prior trading practices at times calculated to maximize the personal

---

[70]     Mem. at 30.

[71]     Mot. for Leave at 2 (claiming that "[m]oreover, the Memorandum indicates that the Complaint plead facts concerning insider stock sales sufficient to permit an inference of scienter to be meaningfully enhanced, but declined to do so in this case because the Complaint's other scienter allegations were insufficient").

[72]     Mem. at 29.

[73]     *See, e.g.*, Mot. to Dismiss at 17 (collecting cases); Reply in Support of Mot. to Dismiss at 7-8 (same); Resp. to Objs. at 13-14 (same).

benefit from undisclosed inside information."[74]   Trading is not suspicious merely because large numbers are involved,[75] because other individuals not named as defendants sold stock, or because a defendant exercises options well before their expiration.[76]   The Dismissed Complaint lacked any allegations sufficient to establish suspicious trading.

The Proposed Complaint suffers from the same defect.  The Proposed Complaint merely repeats verbatim the allegations regarding the timing and amounts of sales of McDermott's stock by the individual Defendants and other McDermott insiders.[77]   It therefore pleads no facts that demonstrate that any of the trades were suspicious, and therefore no facts that are probative of scienter.[78]

## V.   The Proposed Complaint fails to raise an inference of scienter because it impermissibly relies on group pleading.

Despite their assertion that the "[Proposed] Complaint does not rely on the 'group-pleading doctrine' to allege scienter,"[79] Plaintiffs again engage in impermissible group-pleading to support their scienter theory.[80]   The group-pleading doctrine states that Plaintiffs may not make their case by pleading that "the collective knowledge of all the corporation's officers and employees acquired in the course of their employment" supports an inference of guilty

---

[74]   *In re Enron Corp. Sec., Derivative, & "ERISA Litig."*, 258 F. Supp. 2d 576, 593 (S.D. Tex. 2003) (internal quotation marks and citation omitted).

[75]   "[B]y themselves, large numbers do not necessarily create a strong inference of fraud." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (citing cases holding that sales as large as 98% of a defendant's holdings cannot support a strong inference of fraud if divorced from a prior trading history), *abrogated on other grounds by S. Ferry LP, No. 2*, 542 F.3d at 784.  Plaintiffs, however, assert precisely the opposite. Proposed Compl. ¶¶ 8, 58-63, 67, 85-93, 95-96, 151.

[76]   "[It is] rational and nonfraudulent to exercise options well before the expiration date if the price significantly exceeds that option's strike price . . . ." *In re Enron*, 258 F. Supp. 2d at 612 n.34.  Plaintiffs, however, rely on the timing of option expirations throughout the Proposed Complaint.  Proposed Compl. ¶¶ 58-59, 63, 67, 86-88, 90-92, 95-96, 151.

[77]   Mot. for Leave at 2, 13-14; *See also* Proposed Compl. ¶¶ 8, 58-63, 67, 84-96, 104, 151.

[78]   Plaintiffs make a cursory allegation that the sales described are suspicious, but do not offer any detail or evidence in support.  Mot. for Leave at 13; Proposed Compl. ¶ 151.

[79]   Mot. for Leave at 13.

[80]   *Southland*, 365 F.3d at 374-75 (noting rejection of "group pleading" doctrine and holding that plaintiffs' "group pleading" allegations were "insufficient to give rise to a strong inference of scienter"); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d at 200, 207-08 (5th Cir.), *cert. denied*, 130 S. Ct. 199 (2009).

knowledge on the part of the corporation.[81]   The Proposed Complaint relies heavily on group-pleading as evidence of scienter.  For example, on the basis of a single statement by Defendant Wilkinson, Plaintiffs state that "Defendants were well aware during the Class Period" of delays in the barge schedule, a classic example of impermissible group-pleading.[82]   In another instance, in a single statement, Plaintiffs make the conclusory allegation that at least twenty-two different purported misrepresentations can be attributed to Defendants generally and that the scienter of "Defendants" may be inferred from that fact.[83]   This is group-pleading used as evidence of scienter, and it is impermissible.   It is also textbook "puzzle pleading," applying generic allegations against large numbers of block quotations without differentiation.[84]   Because such allegations are impermissible and grounds for dismissal under Rule 12(b)(6), leave to file the Proposed Complaint should be denied on this basis as well.[85]

## VI.   The Proposed Complaint fails to satisfy the non-scienter pleading requirements of the PSLRA.

Even if the Proposed Complaint had remedied the scienter deficiencies of the Dismissed Complaint, it would fail under the PSLRA and Rule 12(b)(6) because it suffers from many other legal obstacles.

---

[81]   *Southland*, 365 F.3d at 366.

[82]   Proposed Compl. ¶ 150.

[83]   *Id.* ¶ 141 (citing ¶¶ 54, 64, 68, 72, 74-79, 99, 105-106, 108-112, 115, 136, 139).  Plaintiffs go on to assert that these and other purported misrepresentations show that "*Defendants knew or recklessly ignored* the fact that delays in the commencement and performance of the Three Qatar Projects precluded J. Ray from performing the projects in accordance with J. Ray's bid assumptions."  *Id.* (emphasis added).

[84]   *See* Mot. to Dismiss at vi, 1 n.4 (citing *McCasland v. FormFactor Inc.*, No. 07-CV-05545, 2008 WL 2951275, at *7 (N.D. Cal. July 25, 2008) (defining a puzzle pleading as one which fails under the PSLRA by, *inter alia*, "juxtaposing the same series of generic conclusions against each set of block quotes, without differentiation or specificity," rendering the complaint "impenetrable")).

[85]   *See* Mot. to Dismiss at 15 (collecting cases regarding group pleading grounds for dismissal); *id.* at 1 n.4 (collecting cases regarding puzzle pleading as grounds for dismissal).

First, under the PSLRA and Rule 9(b), Plaintiffs must specify *each statement* alleged to have been false or misleading.[86]   As in the Dismissed Complaint, rather than identifying particular statements alleged to be false, the Proposed Complaint offers dozens of pages of block quotes and occasional conclusory statements that the preceding statements were false.[87]  This does not satisfy Plaintiffs' pleading burden.  Worse, the Proposed Complaint offers no explanation for *why* the vast majority of the alleged misrepresentations were false or misleading.   Although insufficient to remedy this defect, the Dismissed Complaint at least purported to offer a "key" to the puzzle pleading, pointing to various paragraphs within the Dismissed Complaint as the reasons why the statements quoted in other paragraphs were false and misleading.[88]  The Proposed Complaint offers not even this much guidance, notwithstanding Plaintiffs' inclusion of thirty more pages of random quotations.

The Proposed Complaint also fails under the PSLRA's safe harbor provision, which protects defendants from liability for a forward-looking statement if (1) the statement is identified as forward-looking and it is either (a) accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement or (b) immaterial; or (2) the plaintiff fails to prove that the statement was made with actual knowledge that the statement was false or misleading.[89]  As explained in the Motion to Dismiss, "[McDermott's] disclosures regarding backlog and anticipated profitability are nonactionable forward-looking statements under the first prong, and were identified as such, as they concern expectations and projections of revenue and costs."[90]

---

[86]  *E.g.*, *Southland*, 365 F.3d at 361-62; *Abrams*, 292 F.3d at 431 (affirming this Court's dismissal).

[87]  *See* Mot. to Dismiss at 6-13.

[88]  *See* Dismissed Compl. ¶¶ 87-92.

[89]  15 U.S.C. § 78u-5(c)(1)(A)-(B) (2006).  *See also Southland*, 365 F.3d at 371-72; Mot. to Dismiss at 19-20.

[90]  Mot. to Dismiss at 20.  The conference call transcripts and filings from within the Class Period to which Plaintiffs cite were appended to the Motion to Dismiss.  Because Plaintiffs do not even allege any

Because Plaintiffs have not adequately pleaded Defendants' actual knowledge, Defendants' disclosures concerning backlog and profitability are independently protected under the second prong.

CONCLUSION

The Court should deny Plaintiffs' Motion for Leave and dismiss this case with prejudice.  The Proposed Complaint would be dismissible under Rule 12(b)(6) for failure to adequately plead a strong inference of scienter.[91]  Furthermore, the Proposed Complaint is subject to dismissal on many grounds in addition to lack of scienter, including Plaintiffs' failure to plead falsity with particularity, the fact that the alleged misrepresentations are protected by the PSLRA's Safe Harbor, and the Proposed Complaint's reliance on group-pleading and puzzle pleading.  It is well-settled that courts may deny Plaintiffs leave to amend a complaint if amendment would be futile because the proposed amendment could not survive a motion to dismiss.[92]  This is such an instance.

For these reasons, Defendants respectfully submit that the Court should deny Lead Plaintiffs' Motion for Leave to Amend and dismiss this action with prejudice.

DATED this 21st day of May, 2010.

---

misrepresentations in the many irrelevant conference calls and filings from prior to the Class Period to which they now cite, Defendants have not burdened the Court by appending all of these public documents.

[91]      Should the Court allow the Proposed Complaint to be filed, Defendants reserve the right to move for its dismissal.

[92]      *See, e.g.*, *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile." (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

By: ___/s/ Mark K. Glasser_____

Of Counsel:                              Mark K. Glasser
Jeffrey J. McNabb                        Attorney-in-Charge
State Bar No. 24046406                   State Bar No. 08014500
Federal I.D. No. 664844                  Federal I.D. No. 930
Edward M. Cottrell                       One Shell Plaza
State Bar No. 24065084                   910 Louisiana
Federal I.D. No. 1035244                 Houston, Texas  77002
910 Louisiana                            Telephone:  713.229.1281
Houston, Texas 77002                     Facsimile:  713.229.7881
Telephone: 713.229.1234                  mark.glasser@bakerbotts.com
Facsimile:  713.229.1522

ATTORNEY FOR DEFENDANTS
MCDERMOTT INTERNATIONAL, INC.,
BRUCE W. WILKINSON, MICHAEL S. TAFF,
AND ROBERT A. DEASON

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2010, a copy of the foregoing DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR LEAVE TO AMEND was filed with the clerk of the court of the United States District Court for the Southern District of Texas and will be served on all counsel of record via *electronic notification by the court and/or certified mail, return receipt requested.*

/s/ Mark K. Glasser_____
Mark K. Glasser